UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GHERSON TOVAR and LARRY WIEGAND, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NBTY, INC. and UNITED STATES NUTRITION INC.,<br><br>Defendants. | Case No. 3:16-cv-01037-DRH-SCW<br><br>JURY TRIAL DEMANDED |

# FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Gherson Tovar and Larry Wiegand ("Plaintiffs"), individually and on behalf of all others similarly situated, by their undersigned attorneys, upon personal knowledge as to themselves, upon information and belief, and based upon the investigation of their Counsel as to the remaining allegations, allege as follows:

## INTRODUCTION

1. This is a civil class action brought by Plaintiffs on behalf of themselves and all others similarly situated who purchased Body Fortress 100% Pure Glutamine Powder dietary supplement (the "Product").

2. Defendants advertise, manufacture, market, sell and distribute the Product throughout the United States.

3. Defendants, like many companies in the bodybuilding supplement industry, totally ignore competent and reliable scientific data regarding their products and ingredients.

4. Defendants' Product is generally categorized as an "L-Glutamine" product.

5. L-Glutamine ("L-Glutamine" and "Glutamine" as used herein are synonymous) is a naturally-occurring, nonessential, neutral amino acid. It is important as a constituent of proteins and as a means of nitrogen transport between tissues. It is "nonessential" because the human body produces its own glutamine.

6. Glutamine is the most abundant free amino acid in human skeletal muscle and plasma.

7. Many healthy people are under the impression, perpetuated by the likes of Defendants here, that a supplemented intake of glutamine has beneficial effects. This is frequently the case among athletes and bodybuilders, who commonly consume glutamine 1 to 3 times daily.

8. Glutamine supplementation doses range from 2 to 40 grams per day, which represents 3% to 60% of the recommended intake of amino nitrogen.

9. Simply because a substance, such as glutamine, is a nutrient, does not necessarily mean that ingesting it as a supplement is beneficial.

10. While it is true that Glutamine naturally found within the body plays a role in certain mechanisms supporting muscle growth and recovery and immunity support, as noted in the numerous scientific citations contained herein, glutamine supplementation has been found to be completely ineffective at mimicking these physiological responses.

11. Simply put, the ingestion of Defendants' Product does absolutely nothing for the recovery from exercise or recovery of muscle tissue.

**PARTIES**

12. During the Class period, Class members in Illinois, and throughout the United States, purchased the Product through numerous brick and mortar and online retail stores. Plaintiffs and Class members suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices set forth in this Complaint.

13. Plaintiff Gherson Tovar is a citizen of the state of Illinois residing in Monroe County who purchased the Product for his own use in or around March 2016 from Wal-Mart in Monroe County after reviewing the label of the Product, which deceived him. If Plaintiff had known the Product in fact did not work as advertised, he would not have purchased it or would have paid less for it.

14. Plaintiff Larry Wiegand is a citizen of the state of Illinois residing in Monroe County who purchased the Product for his own use in or around January 2016 from Wal-Mart in Monroe County after reviewing the label of the Product, which deceived him. If Plaintiff had known the Product in fact did not work as advertised, he would not have purchased it or would have paid less for it.

15. NBTY, Inc. is corporation incorporated in the state of Delaware, with a principal place of business located at 2100 Smithtown Avenue, Ronkonkoma, New York 11779. Upon information and belief, NBTY, Inc. has a controlling interest in Defendant United States Nutrition, Inc.,

16. United States Nutrition, Inc. is a corporation incorporated in the state of Delaware, with a principal place of business located at 90 Orville Drive, Bohemia, New York 11716. Upon information and belief, United States Nutrition, Inc. is a subsidiary of Defendant NBTY, Inc.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d) because there are over 100 class members, the combined claims of the proposed class members exceed $5,000,000 and because Defendants are a citizen of a different state from the members of the Class.

18. This Court has personal jurisdiction over Defendants because they regularly conduct business in this District. Defendants have had more than minimum contacts with the State of Illinois and have purposefully availed themselves of the privilege of conducting business in this state. In addition, as explained below, Defendants have committed affirmative tortious acts within the State of Illinois that gives rise to civil liability, including distributing the misleading Product for sale throughout the State of Illinois.

19. Venue is proper in this District pursuant to: (a) 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District; and (b) 28 U.S.C. § 1391(b)(3) in that Defendant is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

20. The front of the Product's label clearly states that the Product is the "Ultimate Recovery Fuel" and that the Product "Assists Recovery From Workouts"[1]:

[1] Although Plaintiffs purchased the Product with the label depicted here, Defendants currently have a new version of the label. However, the new label includes the same misrepresentation "Ultimate Recovery Fuel" and the substantially similar claim "Boosts Post-Workout Recovery". *See* http://www.bodyfortress.com/100-PURE-GLUTAMINE-POWDER (Last visited August 24, 2016).




21. Defendants' recovery claims, however, are blatantly false according to numerous scientific research papers, as contained herein.

22. "Recovery" in bodybuilding is the process of the fatigued muscles to recuperate and grow after resistance training. This process enables the body to undergo muscle growth.

23. In one study, glutamine failed to affect muscle protein kinetics of the test subjects.[2]

24. In a study involving healthy humans, glutamine was continuously infused for 2.5 hours at a rate corresponding to 0.4 grams/kg, which revealed that glutamine supplement did not stimulate muscle protein synthesis.[3]

---

[2] Gore D., Wolfe R. Glutamine supplementation fails to affect muscle protein kinetics in critically ill patients. *JPEN J Parenter Enteral Nutr*, 2002, 26:342-49.

25. Another study investigated the effect of L-glutamine supplementation on the plasma and muscle tissue glutamine concentrations of exercise-trained rats, both immediately and three hours after a single exercise session until exhaustion. In that study, rats were subjected to 60 minutes of swimming exercise daily for six weeks. During the final three weeks, one group was given a daily dose of L-glutamine (1 gram/kg). The plasma and muscle glutamine levels were higher than placebo during the post-exhaustive recovery period; however, this increase had no effect on the exercise swim test to exhaustion performance, suggesting that elevations in plasma and muscle glutamine levels have no benefit on muscle performance.[4]

26. An additional study was also conducted to assess the effect of oral glutamine supplementation combined with resistance training in young adults. Subjects received either placebo (0.9 grams/kg fat-free mass/day of maltodextrin) or L-glutamine (0.9 grams/kg fat-free mass/day) during six weeks of resistance training. Results showed that muscle strength, torque, fat-free mass, and urinary 3-methyl histidine (a marker of muscle protein degradation) all significantly increased with training, but were not different between the groups. This study demonstrated that L-glutamine supplementation during resistance training had no significant effect on muscle performance, body composition, or muscle protein degradation in young, healthy adults.[5]

27. Moreover, a study was performed to examine the effects of a combination of effervescent creatine, ribose, and glutamine on muscle strength, endurance, and body

---

[3] Svanberg E., Moller-Loswick A., Matthews D., Korner U., Lundholm K. The effect of glutamine on protein balance and amino acid flux across arm and leg tissues in healthy volunteers. *Clin Physiol*, 2001, 4:478-89.
[4] Rogero M., Tirapequi J., Pedrose R., Castro I., Pires I. Effect of alanyl-glutamine supplementation on plasma and tissue glutamine concentrations in rats submitted to exhaustive exercise. *Nutrition*, 2006, 22:564-71.
[5] Candow D., Chilibeck P., Burke D, Davison K., Smith-Palmer T. Effect of glutamine supplementation combined with resistance training in young adults. *Eur J Appl Physiol*, 2001, 86:142-49.

composition in resistance-trained men. Subjects performed resistance training while ingesting either placebo or an experimental supplement (5 grams of creatine, 3 grams of glutamine, and 2 grams ribose) for eight weeks. Both groups significantly improved muscle strength, endurance, and fat-free mass, yet the groups were not significantly different from one another. Therefore, the experimental supplement, which included glutamine, was no more effective than placebo in improving skeletal muscle adaptation to resistance training.[6]

28. Another study sought to determine the effects of eight weeks of creatine monohydrate and glutamine supplementation on body composition and performance measures. Subjects were randomly assigned to receive either placebo for eight weeks, creatine monohydrate (0.3 grams/kg/day for one week and then 0.03 grams/kg/day for seven weeks), or the same dose of creatine in addition to 4 grams of glutamine per day while engaged in a resistance training program. Body mass and fat-free mass increased in the creatine and creatine + glutamine groups at a greater rate than with placebo. Additionally, the two experimental groups underwent a significantly greater improvement in the initial rate of muscle power production compared to placebo. These results suggest that the creatine and creatine + glutamine groups were equally effective in producing skeletal adaptation to resistance training and that glutamine apparently had no preferential effect in augmenting the results.[7]

29. One study was performed to determine if high-dose glutamine ingestion affected weightlifting performance. In a double-blind, placebo-controlled, crossover study, resistance-trained men performed weightlifting exercises one hour after ingesting placebo (calorie-free

[6] Falk D., Heelan K., Thyfault J., Koch A. Effects of effervescent creatine, ribose, and glutamine supplementation on muscle strength, muscular endurance, and body composition. *J Strength Cond Res*, 2003, 17:810-16.
[7] Lehmkuhl M., Malone M., Justice B., Trone G., Pistilli E., Vinci D., Haff E., Kilgore L., Haff G. The effects of 8 weeks of creatine monohydrate and glutamine supplementation on body composition and performance measures. *J Strength Cond Res*, 2003, 17:425-38.

fruit juice) or glutamine (0.3 g/kg) mixed with calorie-free fruit juice. Results demonstrated no significant differences in weightlifting performance (maximal repetitions on the bench press and leg press exercises), indicating that the short-term ingestion of glutamine did not enhance weightlifting performance in resistance-trained men.[8]

30. Similarly, another study sought to determine whether glutamine ingestion influenced acid-base balance or improved high-intensity exercise performance. Trained males performed five exercise bouts on a cycle ergometer at 100% of maximal oxygen consumption. The first four bouts were 60 seconds in duration, while the fifth bout was continued to fatigue. Each bout was separated by 60 seconds of recovery. The exercise bouts were initiated 90 minutes after ingesting either placebo or 0.3 grams/kg of glutamine. Results showed that blood pH, bicarbonate, and lactate, along with time to fatigue, were not significantly different between supplement conditions, indicating that the acute ingestion of L-glutamine did not enhance either buffering potential or high-intensity exercise performance in trained males.[9]

31. Another study determined whether oral glutamine, by itself or in combination with hyperoxia, influenced oxidative metabolism or cycle time-trial performance in men. Subjects ingested either placebo or 0.125 grams/kg of glutamine one hour before completing a brief high-intensity time-trial (approximately four minutes in duration). The results showed no significant difference in pulmonary oxygen uptake during the exercise test, thereby indicating no effect of glutamine ingestion either alone or in combination with hyperoxia. Thus, there was

---

[8] Antonio J., Sanders M, Kalman D., Woodgate D., Street C. The effects of high-dose glutamine ingestion on weightlifting performance. *J Strength Cond Res*, 2002, 16:157-60.

[9] Haub M., Potteiger J., Nau K., Webster M., Zebas C. Acute L-glutamine ingestion does not improve maximal effort exercise. *J Sports Med Phys Fitness*, 1998, 38:240-44.

no limiting effect of the tricarboxylic acid intermediate pool size on oxidative metabolism or performance during exercise.[10]

32. While the front label of Defendant's Product has asterisks after each of the false claims of enhanced recovery, the only scientific citation found on the label is *Keast, D.* The Medical Jrnl. of Australia. 1995, as follows:




33. But that study only researched the levels of endogenous Glutamine found within the body and the resulting effects of exercise, and not the effects of L-Glutamine

[10] Marwood S., Botwell J. No effect of glutamine supplementation and hyperoxia on oxidative metabolism and performance during high-intensity exercise. *J Sports Sci*, 2008, 26:1081-90.

supplementation. In fact, none of the study participants ingested supplemental L-Glutamine at all.

34. Defendants thus mislead consumers (1) by extrapolating the effects of naturally occurring endogenous Glutamine, with that of L-Glutamine supplementation; and (2) by citing to a study that does not support the notion that Glutamine supplementation assists in recovery.

35. Plaintiffs and the Class purchased and consumed the Product because they believed, based upon the misleading label, that it enhanced muscle growth as well as provided faster recovery.

36. Defendants' labeling of the Product was misleading to Plaintiffs and the Class.

37. Plaintiffs and Class members were in fact misled by Defendants' representations regarding the efficacy of the Product.

38. The difference between the Product promised and the Product sold is significant. The lack of benefits provided to consumers by the Product fully diminishes the actual value of the Product.

39. Plaintiffs and the Class would not have bought Defendants' Product if they had known it did not provide the health benefits as advertised on the label.

40. Defendant's deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food misbranded when the label contains a statement that is "false or misleading in any particular."

41. The United States Food and Drug Administration (the "FDA") promulgated regulations for compliance with the Federal Food, Drug, and Cosmetic Act ("FDCA") and the Dietary Supplement Health and Education Act (the "DSHEA") at 21 C.F.R. § 101, *et seq*. Defendant's fabricated food Product is misbranded under 21 C.F.R. § 101, *et seq*.

42. Illinois has also expressly adopted the federal food labeling requirements as its own: "[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation." 410 ILCS 620/21. Thus, a violation of federal food labeling laws is an independent violation of Illinois law and actionable as such.

43. Pursuant to 410 ILCS 620/11, which mirrors 21 U.S.C. § 343(a), "[a] food is misbranded – (a) If its labeling is false or misleading in any particular."

44. The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Complaint.

45. Also, the Illinois Consumer Fraud and Deceptive Business Practices Act also protects Defendant's consumers, and provides:

> § 2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

46. Plaintiffs and Class members would not have purchased the Product, or would have not paid as much for the Product, had they known the truth about the mislabeled and falsely advertised Product.

## CLASS ACTION ALLEGATIONS

47. Plaintiffs bring this action individually and as representatives of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Classes:

> **National Class:** All persons in the United States who purchased the Product.
>
> **Consumer Fraud Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington who purchased the Product.[11]
>
> **Illinois Subclass:** All persons in the State of Illinois who purchased the Product.

Excluded from the Classes are Defendants and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

48. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

49. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, Class members number in the thousands to millions. The precise number of Class members and their addresses are presently unknown to Plaintiffs, but may be ascertained from Defendants' books and records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

50. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class members and predominate

---

[11] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code §17200, *et seq*.); Florida (Fla. Stat. §501.201, *et seq*.); Illinois (815 Ill. Comp. Stat. 505/1, *et seq*.); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq*.); Michigan (Mich. Comp. Laws §445.901, *et seq*.); Minnesota (Minn. Stat. §325F.67, *et seq*.); Missouri (Mo. Rev. Stat. 010, *et seq*.); New Jersey (N.J. Stat. §56:8-1, *et seq*.); New York (N.Y. Gen. Bus. Law §349, *et seq*.); and Washington (Wash. Rev. Code §19.86.010, *et seq*.).

over questions affecting only individual Class members. Such common questions of law or fact include:

a. Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive;

b. Whether Defendants' actions violate the State consumer fraud statutes invoked below;

c. Whether Defendants breached an express warranty to Plaintiffs and Class members; and

d. Whether Defendants were unjustly enriched at the expense of the Plaintiffs and Class Members.

51. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, are pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

52. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other members of the Classes because, among other things, all Class members were comparably injured through Defendants' uniform misconduct described above. Further, there are no defenses available to Defendants that are unique to Plaintiffs.

53. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members they seek to represent, they have retained counsel competent and experienced in complex class action litigation, and they will prosecute this action

vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

54. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue hardship and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

55. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

56. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a

potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS ALLEGED

### COUNT I
### Violation Of State Consumer Fraud Acts
### (On Behalf Of The Multi-State Class)

57. Plaintiffs incorporate all paragraphs above as if fully set forth herein.

58. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class[12] prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

59. Defendants intended that Plaintiffs and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

60. As a result of the Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

61. In addition, Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

---

[12] California (Cal. Bus. & Prof. Code §17200, *et seq.*); Florida (Fla. Stat. §501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §445.901, *et seq.*); Minnesota (Minn. Stat. §325F.67, *et seq.*); Missouri (Mo. Rev. Stat. 010, *et seq.*); New Jersey (N.J. Stat. §56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §349, *et seq.*); and Washington (Wash. Rev. Code §19.86.010, *et seq.*).

## COUNT II

**Violation Of The Illinois Consumer Fraud And Deceptive Business Practices Act (In The Alternative To Count I And On Behalf Of The Illinois Subclass)**

62. Plaintiffs incorporate all paragraphs above as if fully set forth herein.

63. The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

64. Defendants' conduct in representing the benefits of its Product constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendants' trade or commerce.

65. Defendants intended that Plaintiff and the Class Members would rely on its representations. The sole purpose of glutamine is its supposed ability to assist in recovery from workouts, and Defendants intended to prey on that misconception.

66. The recovery misrepresentations are material because they concerns the type of information upon which a reasonable consumer would be expected to rely in making a decision whether to purchase the Product.

67. Because Defendants are in the business of selling supplement products, Defendants committed the unfair and deceptive acts in the conduct of their trade and commerce.

68. Defendants' practice of misrepresenting the Product is also unfair because it offends public policy and is immoral, unethical, and unscrupulous because Illinois consumers are being misled about the very efficacy and purpose of the Product. Misrepresenting the Product offends the public's expectation to be told the truth about the products they are buying.

69. Defendant's conduct also causes substantial injury to consumers. Not only are consumers being misled into purchasing a Product that is not what it is represented to be, but consumers are paying for and ingesting a Product with absolutely no value or benefit.

70. Because the Product has no efficacy, the Product as sold was worth less than the Product as represented, and Plaintiff and Class Members paid a premium for it. Had the truth be known, Plaintiff and Class Members would not have purchased the Product or would have paid less for it.

71. Plaintiff and Class Members were deceived by the labeling on the Product and suffered economic damages as a proximate result of Defendant's unlawful conduct as alleged herein, including the difference between the actual value of the Product and the value of the Product if it had been as represented.

72. Plaintiff also seeks to enjoin Defendants' ongoing deceptive practices relating to its claims on the Product's labels and advertising.

**COUNT III**
**Breach Of Express Warranty**
**(On Behalf Of The National Class)**

73. Plaintiffs incorporate all paragraphs above as if fully set forth herein.

74. Plaintiffs, and each member of the National Class, formed a contract with Defendants at the time Plaintiffs and the other members of the National Class purchased the Product. The terms of the contract included the promises and affirmations of fact made by Defendants on the Product's packaging and through marketing and advertising, as described above. This labeling, marketing and advertising constitute express warranties and became part of the basis of bargain, and are part of the standardized contract between Plaintiffs and the members of the National Class and Defendants.

75. Plaintiffs and the National Class performed all conditions precedent to Defendants' liability under this contract when they purchased the Product.

76. Defendants breached express warranties about the Product and its qualities because Defendants' statements about the Product were false and the Product does not conform to Defendants' affirmations and promises described above.

77. Plaintiffs and each of the members of the National Class would not have purchased the Product had they known the true nature of the Product.

78. As a result of Defendants' breach of warranty, Plaintiffs and each of the members of the National Class have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from their purchases.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf Of The National Class)**

79. Plaintiffs incorporate all paragraphs above as if fully set forth herein.

80. Plaintiffs and the other members of the National Class conferred benefits on Defendants by purchasing the Product.

81. Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and the other members of the National Class' purchase of the Product. Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Product was misleading to consumers, which caused injuries to Plaintiffs and the other members of the National Class because they would have not purchased the Product if the true facts would have been known.

82. Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and the other members of the National Class is unjust and inequitable, Defendants

must pay restitution to Plaintiffs and the other members of the National Class for their unjust enrichment, as ordered by the Court.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all claims in this complaint so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully request that the Court enter judgment as follows:

A. Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiffs as Class Representatives, and appointing the undersigned counsel as Class Counsel for the Classes;

B. Enjoining Defendants from engaging in the unlawful conduct set forth herein;

C. Ordering Defendants to pay actual damages to Plaintiffs and the other members of the Classes;

D. Ordering Defendants to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Classes;

E. Ordering Defendants to pay statutory damages, as provided by the applicable state consumer protection statutes invoked above, to Plaintiffs and the other members of the Classes;

F. Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Classes;

G. Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

H. Leave to amend this Complaint to conform to the evidence presented at trial; and

I. Ordering such other and further relief as may be just and proper.

Dated: October 10, 2016

Respectfully submitted,

/s/ Matthew H. Armstrong
Matthew H. Armstrong (ARDC 6226591)
ARMSTRONG LAW FIRM LLC
8816 Manchester Rd., No. 109
St. Louis MO 63144
Tel: 314-258-0212
Email: matt@mattarmstronglaw.com

Nick Suciu III
BARBAT, MANSOUR & SUCIU PLLC
1644 Bracken Rd.
Bloomfield Hills MI 48302
Tel: 313-303-3472
Email: nicksuciu@bmslawyers.com

Stuart L. Cochran
STECKLER GRESHAM COCHRAN
12720 Hillcrest Rd., Ste. 1045
Dallas, TX 75230
(p) 972.387.4040
(f) 972.387.4041
scochran@scochranlaw.com

Counsel for Plaintiffs and the proposed Putative Classes

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which electronically delivered a copy of the same to all counsel of record.

/s/ Matthew H. Armstrong